IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

HAROLD S. MOSS, JR.,

Plaintiff,

v.

JOHN E. POTTER, Postmaster General,
United States Postal Service,

Defendant.

Civil Action No.: 3:06–CV–576

## MEMORANDUM OPINION

THIS MATTER comes before the Court on Defendant John E. Potter's Motion for

Summary Judgment pursuant to Federal Rule of Civil Procedure 56, filed as Docket Entry No.

10. On August 24, 2006, Plaintiff Harold S. Moss, Jr., instituted this civil action against the

Postmaster General of the United States upon the following causes: (1) a violation of the

Whistleblower Protection Act, pursuant to Title 5, United States Code § 1201; (2) a civil rights

violation, pursuant to Title 42, United States Code § 1983; and Title VII violations for (3) gender

discrimination and (4) retaliation. At oral argument, held on May 23, 2007, the Plaintiff

voluntarily withdrew the first three claims from the Court's consideration, leaving only the claim

for retaliatory employment discrimination. Upon due consideration, and for the reasons stated

herein, Defendant's motion for summary judgment shall be GRANTED.

## I.

Harold Moss has been employed by the United States Postal Service ("the USPS" or "the

Postal Service") for nearly twenty years. Between the years 2002 and 2004, he was a Supervisor

of Customer Services at the Northside Station Postal Facility in Richmond, Virginia, a position through which he became aware of certain mail delivery practices involving his direct supervisor, Ms. Sheila Lea Lewis, that he believed to be improper. The Plaintiff attempted to make his concerns known to supervisors within the chain of command, including Mr. Eddie Thomas Archer, who was the Manager of Customer Service Operations for the City of Richmond and the person to whom Ms. Lewis reported, though to no avail. Soon thereafter, Ms. Lewis and Mr. Archer are alleged to have "initiated and continued systemic and daily harassments and abuses against [Moss]," including: (1) directing him to falsify mail counts and reports; (2) ordering him to discipline employees when discipline was not warranted; (3) belittling him in front of others; (4) assigning menial and humiliating work details; (5) threatening discipline and penalties; (6) denying leave time; (7) isolating him from others; (8) denying training and advancement opportunities; and (9) denying promotion opportunities. Compl. pp. 2–3.

Two of these allegations in particular were raised in administrative proceedings. On May 12, 2003, the Plaintiff sought pre-complaint counseling through the Postal Service for multiple denials of leave and for being reprimanded for his failure to abide by Postal Service dress code. A formal EEO complaint was filed on August 24, 2003, and was accepted for investigation on October 20, 2003. The complaint was amended on June 8, 2004, to include additional allegations of improper denials of leave requests. Moss's claims were summarily dismissed by a Final Agency Decision rendered January 27, 2007. It is the Court's understanding that the Plaintiff continues to be employed by the Postal Service, and has been so employed throughout the pendency of these claims without interruption.

2

## II.

Summary judgment may be entered when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In the context of actions for unlawful employment discrimination, the propriety of granting summary judgment is tested pursuant to the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1971). See Laber v. Harvey, 438 F.3d 404 (4th Cir. 2006)(noting that McDonnell Douglas is applied specifically to Title VII retaliatory discrimination claims). The initial burden within this framework is the complainant's, to establish a prima facie case of discrimination. The secondary burden is the employer's, to respond with a legitimate, non-discriminatory reason for its actions. The final burden is again the complainant's, to rebut as pretext the legitimacy of the employer's non-discriminatory justification. In each case in which he bears the burden, the complainant "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)(citation and emphasis omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position," much less unsupported allegations, "will be insufficient." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## III.

The Plaintiff is a federal employee who claims to have been the victim of retaliatory employment discrimination. As a general observation, the federal government is explicitly prohibited from engaging in employment-related discrimination on the basis of an individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-16. And though there is no express prohibition against discriminating against an individual who opposes such unlawful

practices, the courts have wisely implied a reprisal cause of action into the statutory scheme. See, e.g., Baqir v. Principi, 434 F.3d 733, 747 n.16 (4th Cir. 2006)(noting with approval that Section 704(a) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3, has been incorporated into § 2000e-16, which protects federal employees from discrimination). Accordingly, federal employers may not retaliate against an employee for opposing an unlawful employment practice, such as discrimination on the basis of race or religion, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII. 42 U.S.C. § 2000e-3.

The first matter to address is whether the Plaintiff is capable of stating a prima facie cause of action for retaliation. To do so, he must show: (1) that he engaged in a protected activity; (2) that a materially adverse employment action was taken against him; and (3) that there was a causal link between the protected activity and the adverse action. Compare Burlington N. & Santa Fe Ry. Co. v. White, 126 S. Ct. 2405, 2415 (2006), with Laber v. Harvey, 438 F.3d 404 (4th Cir. 2006). Each element shall be considered in turn.

To begin with, it is absolutely necessary that the complainant in an action for retaliation identify a protected activity in which he engaged and for which he suffered some reprisal. "Protected activity" has a very precise definition. It can only refer to either of two activities: opposition to an unlawful employment practice, or participation in an investigation, hearing, or proceeding regarding such practices. 42 U.S.C. § 2000e-3; EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 406 (4th Cir. 2005).

There can be no question that the Plaintiff has engaged in protected activity. On May 12, 2003, an internal complaint was filed with the Postal Service in which retaliation was first

4

alleged. This complaint became the basis of a formal investigation conducted by the EEOC, the scope of which was later amended by a supplemental complaint filed on June 8, 2004. These acts firmly establish Moss's participation in a protected activity within Title VII's ambit.

The second element of a prima facie claim for retaliation is that the complainant endure a materially adverse employment action. Like the previous, this term also has a precise meaning. In the context of retaliation, a "materially adverse employment action" is a decision that is capable of dissuading a reasonable worker from making or supporting a charge of discrimination. Burlington N. & Santa Fe Ry. Co. v. White, 126 S. Ct. 2405, 2415 (2006)(internal quotations and citations omitted). "The anti-retaliation provision seeks to prevent employer interference with unfettered access to Title VII's remedial mechanisms. It does so by prohibiting employer actions that are likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers." Id. (internal quotations and citations omitted). Title VII does not, however, establish "a general civility code for the American workplace," and thereby attempt to guard individuals "from those petty slights or minor annoyances that often take place at work and that all employees experience." Id. Instead, the adversity must be material, and its measure objective.

With these standards in mind, it is clear that the Plaintiff's allegations as regarding the dress code policy do not rise to the level of a materially adverse employment action. The Postal Service dress code requires male employees to wear ties while on duty. The dress code is made known to employees, and its observance is expected. Neglecting to dress in proper attire will expose an employee to some form of censure, which is exactly what happened to Moss. The Plaintiff attended work without his tie, and as luck would have it, on a day when an upper-level supervisor visited. Mr. Archer saw the Plaintiff, saw that he was not properly attired, and simply

5

asked why. This appears to be the extent of the encounter; there was no further censure, punishment, or reprimand. To be candid, Moss's complaint amounts to little more than a common frustration shared by generations of white-collared workers, dating from the very hour at which neckwear was first conceived. Professional dress, neckties included, is simply an occupational hazard of middle management. Under these facts, no reasonable person could suppose that the "tie incident," as it has been termed, is anything more than a "minor annoyance" of the modern workplace. It is certainly not actionable.

The final element of a prima facie cause of action for retaliation is the existence of a causal relationship between the protected activity and the materially adverse employment action experienced. Proof of causation is among the more pernicious aspects of establishing any claim, and this case is no different. The Plaintiff has presented two instances of protected EEO activity: the first arose on May 12, 2003, with the filing of the internal complaint; the second, on June 8, 2004, with the filing of the supplemental complaint. These must be considered separately.

The internal complaint sets forth two specific claims accepted by the EEOC for investigation: enforcement of the Postal Service dress code and a total denial of leave for the months spanning December 2002 through March 2003. The internal complaint goes further to explain that such harassment is the product of the Plaintiff's attempts to "blow the whistle" on his supervisor's poor behavior. Whistleblowing, however, is not protected activity within the meaning of Title VII, and any consequent retaliation for whistleblowing is simply not actionable. It was previously explained that the enforcement of the dress code as against the Plaintiff does not give rise to a materially adverse employment action. The denial of leave is another matter. It is certainly conceivable that denying an employee leave in an effort to frustrate his cooperation

6

with an ongoing EEOC investigation could be the type of materially adverse employment action prohibited by Title VII.  But there must be prior EEO activity before there can be a viable cause of action for retaliation; without that aspect, there is no suit. And that is the precise flaw with the Plaintiff's allegations stemming from the internal complaint. At the time of that complaint's filing, there had been no prior EEO activity from which the Plaintiff's supervisors could be moved to retaliate. Accordingly, there is a lack of demonstrable causation between the Plaintiff's filing of the initial complaint and the denials of leave.

The supplemental complaint does not suffer from the same defect. The Plaintiff offered the supplement in response to having been denied all his leave requests for May, allegedly for his responsibility in initiating an EEOC investigation, which at that point had been underway for approximately eight months. At summary judgment, the Court considers the facts, as well as any inferences to be drawn from those facts, in the light more favorable to the non-moving party. Out of deference to that standard, the Court must conclude that Moss has made an adequate showing of causation, and that a prima facie case for retaliation has been stated.

That being said, it does not appear that the Plaintiff's claim can withstand latter inquiries under McDonnell Douglas. The burden has now shifted to the employer to propound a legitimate, non-discriminatory reason for the action taken. Rephrased, the inquiry is whether the Postal Service can explain why Moss was denied leave. In response, the Postal Service has offered the statement of Ms. Lewis, the Plaintiff's immediate supervisor, who explains that Moss's allegations are demonstrably false. Ms. Lewis states that the Plaintiff requested personal leave on May 10, 13, 14, 17, 18, 20, and 21, and that his requests were granted on each occasion without exception. Attached to Ms. Lewis's statement are the leave requests themselves, signed

by the Plaintiff and dated. Ms. Lewis continues: "I have no doubt that I also denied requests for personal leave submitted by Mr. Moss during this time period . . . . I approved or denied requests for personal leave submitted by Mr. Moss, as well as other eligible employees, based on the staffing and other needs of the Northside Station Post Office." Lewis Decl. ¶ 14. On seven days in May the Plaintiff requested and was granted personal leave; on others, leave was requested and denied. Certainly, there are occasions when employees need to be absent on account of personal reasons. But there are limits to the leave that employees may take. Ms. Lewis has been accommodating to the Plaintiff—perhaps even too accommodating. Under these circumstances, and given the striking frequency of occasion on which leave was requested, by a manager, no less, it is clear that the Postal Service had legitimate, non-discriminatory reasons for denying Moss leave.

We come to the final inquiry under <u>McDonnell Douglas</u>, whether the Plaintiff is capable of showing that the reason asserted by the Postal Service for denying leave is merely pretext for unlawful retaliatory discrimination. After a searching examination, the record has yielded no such evidence. Summary judgment shall therefore enter for the Postal Service.

An appropriate Order shall issue.


_____/s/_____
The Honorable James R. Spencer
CHIEF UNITED STATES DISTRICT JUDGE


ENTERED this   31st   day of May 2007

8